PIERCE, Appellant, vs. WRIGHT, Respondent.

*January 14—February 10, 1920.*

*Compromise and settlement: Guardian and ward: Payment of compensation to guardian: Release by ward after majority: Action: Recovery on claim not the basis of the action.*

1. Where a minor voluntarily paid to his general guardian $5,000 as compensation for services in prosecuting a claim against the estate of his mother, and after becoming of age made a demand for the return of the sum paid and later accepted $1,500 in full settlement of his demand, such settlement was binding on him, there being no evidence of fraud or overreaching on the part of the guardian.

2. In a ward's action, brought after becoming of age, against a guardian for the return of money he had voluntarily paid, while a minor, as compensation for the guardian's services, recovery cannot be had on an agreement between the ward and the defendant as trustee for the allowance to the ward of a certain sum in settlement of another transaction in relation to a separate and distinct trust.

ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

John Eli Pierce, father of the plaintiff, died April 20, 1902, leaving an estate of the value of $200,000 or more. In his will the defendant was appointed one of the executors and one of the trustees of the estate. He qualified as trustee and executor and performed his duties as executor until discharged, and performed the duties of a trustee until January, 1918. The estate of the father consisted of real estate situated in New Orleans and real and personal property situated in the city of Milwaukee. The trust being invalid under the laws of Louisiana, the real property situated in New Orleans passed directly to the plaintiff, who was a minor at the time of his father's death. Subsequently, upon the advice of the defendant, the plaintiff had a corporation organized which took over the property in New Orleans. Plaintiff became the owner of all its capi-

tal stock except the necessary qualifying shares. During the minority of the plaintiff his income from the Louisiana property was collected by his mother, who died testate on January 1, 1914, not having accounted for the amounts collected by her. By her will the defendant was made its executor, but, having knowledge of the claim which the plaintiff had against his mother's estate by reason of the collections and conversion of the income of the Louisiana property, the defendant resigned as executor of the estate of Mrs. Pierce, and was appointed guardian of the plaintiff, and as such brought suit against the estate of Mrs. Pierce. The other material facts necessary to the determination of the questions raised here may best be stated in the language of the trial court:

The plaintiff "voluntarily paid to the defendant, *Arthur T. Wright,* the sum of $5,000 as compensation to said *Arthur T. Wright* for services rendered by said *Arthur T. Wright* as general guardian of the plaintiff in the prosecution of a claim against the estate of the plaintiff's mother, Margaret D. Pierce, which said claim was allowed the 7th day of August, 1915, at the sum of $12,208.06.

"(2) That the plaintiff became of age on June 22, 1916; that on the 7th day of July, 1916, the plaintiff executed and delivered to the defendant a release under seal acknowledging receipt of all moneys belonging to the plaintiff and held by the defendant as guardian of the plaintiff and full satisfaction of any and all claims and demands which the plaintiff had against the defendant as guardian. Such release was witnessed by one James J. Kerwin, who first acted as plaintiff's counsel in or about the months of May or June, 1916; that upon the allowance of the accounts of said defendant as the general guardian of the plaintiff the defendant made no claim for and was not allowed any compensation for services of such general guardian.

"(3) That on or about the 28th day of August, 1916, the plaintiff, by his counsel, James J. Kerwin, wrote a letter to the defendant demanding the return by the defendant to the plaintiff of said sum of $5,000 so paid by the plaintiff to the defendant; that thereafter, and for a period which continued from early in the month of September, 1916, to

the 9th day of December, 1916, negotiations were had between the parties in which the defendant was represented by his attorney, Carl B. Rix, and the plaintiff was represented by his attorney, James J. Kerwin; that during the course of such negotiations various offers and counter-offers were made by the respective parties for the purpose of disposing of the plaintiff's claim for the return of said sum of $5,000; that the counsel for the defendant, Carl B. Rix, entertained, in good faith, the belief that serious doubt existed as to the right of the plaintiff to recover the full sum of $5,000; and believed, in good faith, that a court might determine such controversy in favor of the defendant, *Arthur T. Wright,* as to a substantial part of said sum of $5,000; that no fraud or misrepresentation was practiced on the part of the defendant or his counsel in the negotiations with the plaintiff and his counsel during said period; that on the 9th day of December, 1916, plaintiff's said claim was compromised and settled for the sum of $1,500, which was paid by the defendant, and the plaintiff, against the advice of his counsel but without any procurement on the part of the defendant or the defendant's counsel, executed and delivered to the defendant a release under seal, which said release was witnessed by the plaintiff's said counsel; that at the time of the execution of said release the plaintiff understood the full purport and meaning thereof and was under no duress."

There was judgment in favor of the defendant dismissing the plaintiff's complaint, from which the plaintiff appeals.

*Adolph Kanneberg* of Milwaukee, for the appellant.

For the respondent there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *James D. Shaw.*

Rosenberry, J.    Upon this appeal there are but two questions for determination.    First, Does the evidence sustain the findings of the trial court? and second, Do the findings sustain the judgment?

It is immaterial whether the defendant did or did not do many of the things alleged in the brief of counsel; if the set-

tlement made on the 9th day of December, 1916, was a full, fair, and complete settlement, it must stand unless set aside for fraud or mistake. Whatever the circumstances were under which the plaintiff was induced to make payment of the $5,000, the confidential relationship existing at the time of the payment was at an end at the time of the settlement. There is no allegation of fraud or mistake in reference to the settlement. The plaintiff was twenty-one years of age, and there is no claim that he was not fully competent to transact business upon his own account; in addition to which he had the advice and counsel of an attorney of his own choice. He was not under the influence or subject to the domination of the defendant in any way or to any extent, so far as the settlement was concerned; in fact it appears that the whole transaction in regard to the settlement was carried on at arm's length through the attorneys for the respective parties, and the conclusion of the trial court that the cause of action set out in the complaint was compromised, settled, released, and discharged by the plaintiff upon sufficient consideration is the only conclusion which can be reached upon the facts as found by the trial court, and the findings are amply sustained by the evidence.

We refer to one other matter, for the reason that it is argued that it ought to be considered part of the settlement. According to the laws of Louisiana the plaintiff became of age and capable of contracting when he reached eighteen. He thereafter organized the Pierce Investment Company to take over the real estate situated in New Orleans. Subsequently the defendant advanced to the plaintiff considerable sums of money, and finally purchased the stock of the Pierce Investment Company from the plaintiff for the benefit of the trust fund in his hands, for $18,000. During the time that the negotiations for the settlement of the plaintiff's claim against the defendant were pending the plaintiff also set up the claim that this transfer was illegal, because, while he was of age in Loui-

siana, he was not of full age and capable of contracting in Wisconsin. In order to settle this matter and dispose of any defect in the defendant's title, it was suggested by his attorney that the purchase price be increased from $18,000 to $21,000, and that a new transfer be executed by the plaintiff, who was at the time more than twenty-one years of age. The arrangement was accordingly entered into. The question of the defendant's liability or relation to the trust fund is not before us. If any cause of action exists by reason of the payment of the $3,000 increase in the purchase price of the stock, it is a matter which has to do with the defendant's duties as trustee, and the amount cannot be recovered by the plaintiff in this action. As to the claim for the return of the $5,000 set up by the plaintiff's complaint in this action, the plaintiff either settled and compromised the claim or he did not. If he did, as the trial court held, the defendant is not liable to him therefor. If the defendant misappropriated funds belonging to the trust fund (and we express or intimate no opinion as to that), he cannot be held liable therefor in this action.

*By the Court.*—Judgment affirmed.


The following opinion was filed March 8, 1920:


Eschweiler, J. (*dissenting*). The defendant was the lifelong friend of plaintiff's father, was appointed by him executor of his will without bond, and subsequently became the trustee of his large estate. He was the friend for many years and adviser in business matters of plaintiff's mother, consented on her urgent request to act as executor of her estate, and was relieved by her from the giving of any bond as such. Defendant knew the plaintiff from birth, was treated as a trusted friend and adviser, and knew thoroughly the plaintiff's disposition, character, and incompetency in financial matters.

Knowing all the time of the fact of the application by plaintiff's mother to her own use of the income from plaint-

iff's Louisiana real estate, the defendant remained silent as to such situation until after his appointment as executor of the mother's estate. When differences arose between himself and the half-sister of plaintiff who was interested in that estate, defendant first urged an immediate settlement of that estate so as to cut off the filing of this very claim on behalf of plaintiff, and, being disappointed in such efforts, then resigns as such executor and forthwith has himself appointed guardian of the plaintiff for the only purpose of filing this claim. The claim is allowed for $12,000, but is, from the record before us, not collectible to even one half of its face value.

Immediately after plaintiff's marriage, when he is but eighteen years of age, defendant takes a written statement from plaintiff and his wife purporting to release defendant from any liability for advances he might make to the plaintiff pending his minority, and over and above the annual income of the estate. With this agreement as apparent protection and yet knowing the unfortunate inability of plaintiff to handle his financial matters with any sort of reasonable care, the defendant advances within four years, on his own responsibility and without any order of the court, to this boy, $21,000 (including the $5,000 concerned herein) over and above the income of $19,000 properly paid for that period, so that for such period the defendant is assisting or permitting the plaintiff to squander at least $10,000 a year.

It was while breaking bread with the plaintiff that defendant suggests the filing of this claim, giving the plaintiff to understand that defendant alone is possessed of knowledge which would make such a claim enforceable. Plaintiff proposed that defendant should have a quarter or a third of such claim if it could be successfully prosecuted, and to this the defendant made no answer. Subsequently the matter was brought up again, and, as stated by plaintiff, he gathered from defendant's manner that the proposed allowance was too meager, and then, with the spendthrift extravagance that defendant so freely criticised in all other transactions

of the plaintiff than this one, suggested that the claim should be shared by the two equally. The defendant at this time neither chides the plaintiff for his extravagance nor refuses to be its beneficiary, but coyly yields. Subsequently, and when appeal in the matter is threatened and while it is yet uncertain as to how much, if anything, will be realized thereon, and shortly before the plaintiff attains his majority, defendant draws two checks of $2,500 each, being part of an extra advancement he is about making to the plaintiff out of the trust fund, has him indorse these two checks, and they are immediately applied to defendant's own personal account. These make the $5,000 which he asserts he was entitled to receive from his ward for his services as guardian. The prosecution of this claim was substantially all there was to the guardianship proceedings. It involved legal questions almost entirely, and these were presented by attorneys who, it appears, were paid less than $500 for their services. The record before us is ample, in my judgment, to warrant the assumption that for defendant's services in connection with the filing of the claim against the mother's estate $500 would have been an extravagant compensation to defendant. Had the facts been disclosed to the court at the time of the settlement of the guardianship matter, undoubtedly no compensation would have been allowed. *Guardianship of Abel,* 147 Wis. 467, 133 N. W. 583.

Shortly after the obtaining of the release from plaintiff in the guardianship matter a claim was made upon the defendant for the refunding of this $5,000 so taken by him from his ward. His concept of the ethical situation involved is vividly illustrated by his statement that when this demand was made upon him he felt "it was really a case of blackmail." He turns the matter over to an attorney, and from that time on holds himself carefully aloof.

There was then an important and crying necessity for over $6,000 to meet plaintiff's pressing obligations. De-

fendant had not as yet apprised the court in the trusteeship that he had bought, out of the trust fund, the interest of the plaintiff in the Louisiana corporation for $18,000. It was suggested that this might be increased by $3,000 and paid forthwith to plaintiff. It was, however, insisted that this and the payment of $1,500 by defendant should be kept separate, and when the arrangements were perfected they were kept separate so far as the face of the documents was concerned. They were, however, one and inseparable so far as the real substance of the situation between the parties was concerned; were being discussed at the same time; and the several documents were drawn and executed at the same time, as were the payments made.

If we look at the reality of things rather than the form, it is plain that the defendant takes out of the trust fund $3,000 for the purpose of assisting and disposing of that which he was pleased to call the blackmailing proposition of compelling him to refund that to which he had no equitable title and but a most unsubstantial legal title. For his alleged extraordinary services he had obtained an extortionate compensation, and from one with whom he could then make no binding contract.

I think this court should treat the transaction of the payment of the $1,500 out of defendant's own pocket and of the $3,000 out of the trust fund as an agreed settlement for the payment of $4,500, for a just and proper claim of $5,000, but that, it being an indivisible transaction with the defendant as an individual and not as trustee, he should be held to live up to it as an individual and be required to pay the $3,000 out of his own pocket instead of from the trust fund belonging to plaintiff. In that way no violence is done to the rule of law upholding settlements and, what in my judgment is far more important, the equitable doctrine upheld that one shall not be permitted to enjoy ill-gotten gains by breaching the elementary duties imposed upon those in whom have been placed such trust and confidence.